**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR 4963)
Bruce Buechler, Esq. (BB 0324)
Thomas A. Pitta, Esq. (TP 3018)
Nicole Stefanelli, Esq. (NS 4100)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Proposed Counsel to the Debtor and
Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>ADMIRAL WINE AND LIQUOR CO.,<br><br>Debtor. | Chapter 11<br><br>Case No. 10-45213 (   ) |

**DEBTOR'S VERIFIED MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 361, 363 AND 364 AND FED. R. BANKR. P. 4001 (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING AND GRANT SECURITY INTERESTS AND LIENS, (II) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION, (III) SCHEDULING AN INTERIM AND FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Admiral Wine and Liquor Co., the above-captioned debtor and debtor in possession (the "Debtor"), by and through its proposed undersigned counsel, submits this verified motion (the "Motion") for entry of an order, pursuant to sections 361, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtor to obtain post-petition financing and grant security interests and liens, (ii) authorizing the Debtor to use cash collateral and provide adequate protection, (iii) scheduling an interim and final hearing, and (iv) granting related relief. In support of the Motion, the Debtor respectfully represents as follows:

24917/2
11/12/2010 16093915.3

## JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. sections 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. sections 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. section 157(b)(2).

2. The statutory predicates for the relief sought herein are sections 361, 363, and 364 of the Bankruptcy Code and Bankruptcy Rule 4001.

## BACKGROUND

3. On November 12, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court").

4. The Debtor continues to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in this chapter 11 case.

5. The Debtor is a New Jersey corporation with principal executive offices located at 74 Sand Park Road, Cedar Grove, New Jersey.

6. Founded in 1961, the Debtor is a family-owned importer and distributor of fine wines and spirits. The Debtor's product line consists of wines and spirits from California, France, Italy, Israel, Scotland, England, Spain, Portugal, Germany, Chile, Australia, Argentina, Czech Republic, Ireland, Mexico, Canada, and Brazil. The Debtor is the exclusive U.S. importer for several international brands.

7. Prior to the Petition Date, the Debtor and Capital One, N.A. ("Capital One") entered into a Loan Agreement dated July 29, 2008 (the "Capital One Loan Agreement") pursuant to which Capital One agreed to make available to the Debtor a line of credit of up to $2,500,000 (the "Capital One Loan"). The Debtor executed and delivered to Capital One a promissory note dated July 29, 2008 (the "Capital One Note"), pursuant to which the Debtor promised to pay to Capital One the principal sum of $2,500,000, or so much thereof as borrowed

by the Debtor under the Capital One Loan Agreement, together with interest thereon at a floating rate set annually at 0.25% below Capital One's Prime Rate, as defined therein, calculated on a 360-day year, with all unpaid principal, interest, and other charges due in full on June 30, 2009.

8. The Debtor executed and delivered to Capital One a Security Agreement dated July 29, 2008 (the "July Security Agreement"), pursuant to which the Debtor granted to Capital One a first position Uniform Commercial Code Security Interest in all of the Debtor's right, title and interest in and to: (a) all machinery, furniture, fixtures, equipment and other personal property of the Debtor, now existing and hereafter acquired; (b) all work in process, materials and inventory of the Debtor, now existing and hereafter acquired; (c) all accounts, claims for monies due and other accounts receivable of the Debtor, now existing and hereafter arising; (d) all general intangibles of the Debtor, now existing and hereafter arising; (e) all documents, instruments, investment property and chattel paper of the Debtor, now existing and hereafter acquired; and (f) all other property and assets of the Debtor, now existing and hereafter acquired.

9. The Debtor further executed and delivered to Capital One a Security Agreement dated September 10, 2008 (the "September Security Agreement"), pursuant to which the Debtor granted to Capital One a Uniform Commercial Code Security Interest in the following collateral, in first position to the extent not covered by the July Security Interest: all personal property now owned or hereafter acquired by the Debtor including but not limited to all goods, consumer goods, farm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper and general intangibles (the collateral as defined in the July Security Agreement and/or the September Security Agreement is collectively defined as the "Collateral").

10. By agreement dated March 27, 2009, the total principal amount available to the Debtor under the Capital One Loan was increased to $2,700,000. All other terms of the Capital One Loan Agreement and the Capital One Note remained unchanged, including the maturity date of June 30, 2009.

11. On August 24, 2009, the Debtor and Capital One entered into a Forbearance Agreement pursuant to which Capital One agreed that it would forbear from exercising its rights due to a default until September 30, 2009. Thereafter, the Debtor and Capital One entered into a Modification and Extension Agreement dated November 25, 2009, pursuant to which, *inter alia*, the maturity date on the Capital One Note was extended to February 28, 2010 and the regular, non-default interest rate on the Capital One Note was changed to Capital One's Prime rate plus 3.0%. On March 26, 2010, the Debtor and Capital One entered into a second Forbearance Agreement pursuant to which Capital One agreed that it would forbear from exercising its rights due to a default until May 31, 2010, and the Debtor agreed that on or before May 31, 2010, the full principal balance of $2,700,000, plus all accrued and outstanding interest would be paid.

12. On or about October 15, 2010, Capital One filed a Verified Complaint for Replevin and/or UCC Repossession of Collateral and for Money Damages in the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. L-8608-10, against the Debtor and other defendants based upon the Debtor's alleged defaults under the Capital One Note.

13. As of the Petition Date, the principal balance due under the Capital One Note is $2,700,000.

14. Year to date in 2010, Zeiger has loaned the Debtor $475,000 on an unsecured basis to fund the Debtor's operations prepetition.

15. The Debtor intends to utilize the chapter 11 process to reorganize its operations and restructure its debt.

**RELIEF REQUESTED**

16. By this Motion, the Debtor respectfully requests that the Court enter an order pursuant to sections 361, 363(c) and 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001:

    (a)    authorizing the Debtor to obtain post-petition financing in the amount of $500,000 from Michael Zeiger, the Debtor's president, secretary and sole equity holder ("Zeiger"), on a final basis, and $200,000 on an interim basis, pursuant to the Term Sheet annexed hereto as Exhibit "A" (the

-4-

"Agreement"),[1] in order to provide the Debtor with the necessary liquidity to operate its business during the pendency of this chapter 11 case;

(b) granting Zeiger a security interest and lien on all assets of the Debtor pursuant to section 364(c)(3) of the Bankruptcy Code junior only to allowed secured claim of Capital One[2] and any other valid and perfected prepetition lien and security interest;

(c) authorizing the Debtor to use Capital One's cash collateral and granting adequate protection in the form of a second lien on real property owned by a non-debtor;

(d) granting Capital One a replacement lien; and

(e) giving notice of and scheduling an interim and final hearing pursuant to Bankruptcy Rule 4001.

## BASIS FOR RELIEF

A. **Request to Obtain Post-Petition Financing and Grant Security Interests and Liens**

17. Section 364(c) of the Bankruptcy Code provides that if a debtor-in-possession is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, then the Court, after notice and a hearing, may authorize the debtor-in-possession to obtain credit or incur debt:

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]; or

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

---

[1] Upon the confirmation of a plan of reorganization proposed by the Debtor in this case, the Zeiger loan may be converted into equity.

[2] The Debtor reserves its right to review and challenge, if appropriate, the liens and security interests of Capital One.

18. Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

> (2) Hearing. The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Bankruptcy Rule 4001(c).

19. Courts have articulated a three-part test to determine whether a debtor may obtain financing under section 364(c) of the Bankruptcy Code:

> (1) the debtor is unable to obtain unsecured credit under section 364(b) (i.e., by granting a lender administrative expense priority);
>
> (2) the credit transaction is necessary to preserve the assets of the estate; and
>
> (3) the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying the above test and holding that "[o]btaining credit should be permitted not only because it is not available elsewhere, which could suggest the unsoundness of the basis for the use of the funds generated by credit, but also because the credit required is of significant benefit to the debtor's estate and the terms of the proposed loan are within the bounds of reason, irrespective of the inability of the debtor to obtain comparable credit elsewhere."); *In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (holding that financing will not be approved where "it is apparent that the purpose of the financing is to benefit a creditor rather than the estate" and that the debtor must show that it has made a reasonable effort to seek other sources of financing under sections 364 (a) and (b) of the Bankruptcy Code).

20. The Debtor believes that the terms of the Agreement are appropriate and reasonable and should be approved as a valid exercise of its reasonable business judgment. *See In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) ("[B]usiness judgments should be left to the board room and not to this Court."). *See also In re Trans World Airlines, Inc. (TWA v. Travelers Int'l A.G.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment on the part of TWA . . . [were] reasonable under the circumstances and in the best interests of TWA and its creditors."); *In re TM Carlton House Partners, LTD*, 91 B.R. 349, 358 (Bankr. E.D. Pa. 1988) (holding that due to the debtor's distinct awareness of its own financial needs, the court would not second-guess its business judgment to put aside cash to effectuate a refinancing of its debts.); *cf., In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985)("Business judgments should be left to the board room and not to this Court."); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-514 (Bankr. D. Utah 1981) (holding that courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor-in-possession's] authority under the [Bankruptcy] Code").

21. The purpose of the Agreement is to provide the Debtor with the necessary liquidity to operate its business during the pendency of this chapter 11 case. As noted above, the Debtor's attempt to negotiate an agreement with Capital One failed and Capital One was seeking an order of the New Jersey Superior Court to take control and possession of the Debtor's assets. The Debtor has no other means of obtaining the financing necessary to operate its business except from Zeiger.

22. The Debtor proposes to grant Zeiger a lien on all assets of the Debtor that is junior to the allowed amount or value of Capital One's secured claim and any other valid and perfected prepetition lien and security interest. Therefore, the Debtor respectfully submits that there is

more than sufficient factual and legal basis for the Court to grant the Motion and authorize the Debtor to enter into the Agreement under section 364(c)(3) of the Bankruptcy Code.

23. Furthermore, the terms and provisions of the Agreement have been negotiated at arms' length by the Debtor and Zeiger and the post-petition financing to be provided by Zeiger has been extended in good faith as that term is used in section 364(e) of the Bankruptcy Code. In addition, the terms and provisions of the Agreement are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtor could obtain the necessary post-petition financing. Thus, Zeiger is entitled to the protections of section 364(e) of the Bankruptcy Code as a good faith lender. The Debtor was unable to obtain unsecured financing from any other source in order to provide the Debtor with the necessary liquidity to operate its business during the pendency of this chapter 11 case.

24. The DIP loan from Zeiger will include a carve out for (i) any costs to the Clerk of the Court, (ii) fees due to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6), and (iii) $100,000 for the allowed fees and expenses of Debtor's counsel.

25. For the foregoing reasons, the Debtor submits that approval of the Agreement is in the best interests of its estate, its creditors and all parties in interest and that the Court should grant the Motion, on an interim basis, and authorize the Debtor to enter into the Agreement with Zeiger.

B.    **Request to Use Cash Collateral and Provide Adequate Protection**

26. The Debtor seeks Court approval to use Capital One's cash collateral in accordance with the budget attached hereto as Exhibit "B" (the "Budget"), subject to a variance of ten percent (10%) of the "net cash flow" line amounts set forth in the Budget. As indicated on the Budget, the Debtor has significant monthly obligations for inventory, wages, rent, taxes, maintenance, insurance and utilities and other costs to operate and run its business. Absent the use of Capital One's cash collateral, the Debtor will be unable to meet these obligations in order to operate on a day-to-day basis and therefore maintain the value of its business as a going-

concern. Accordingly, the Debtor has demonstrated that it has an emergent need for the use of cash collateral.

27. Pursuant to section 363(c) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or Court approval. Capital One, at this time, has not consented to the use of its alleged cash collateral.

28. Bankruptcy Code Section 363(e) provides that, upon request of an entity that has an interest in property to be used by a debtor, the Court shall "prohibit or condition such use… as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). What constitutes adequate protection is determined on a case-by-case basis. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994); *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Adequate protection can be provided in a number of ways under section 361 of the Bankruptcy Code, with the focus being to protect a secured creditor from any diminution in the value of its interest in the collateral during the period during of its use post-petition. *See Swedeland*, 16 F.2d at 564-565; *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995). *See also, In re Cann & Saul Steel Co.*, 76 B.R. 479 (Bankr. E. D. Pa. 1987); *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986) ("Adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy."). Regardless of the form of adequate protection given, "the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case." *Swedeland*, 16 F.2d at 564. Although the term "adequate protection" is not defined in the Bankruptcy Code, section 361 of the Bankruptcy Code sets forth three non-exclusive methods of how an interest in property may be adequately protected. *See id.*

29. Pursuant to section 361 of the Bankruptcy Code, a debtor may provide adequate protection by making a cash or periodic payment to the creditor or providing it with the replacement lien. The creditor is only entitled to protection to the value of its collateral

supporting its secured claim; it is not entitled to adequate protection for lost opportunity costs. *In re Gallegos Research Group, Corp.*, 193 B.R. at 584-85 (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988)); *Cann & Saul Steel*, 76 B.R. at 483.

30. The Debtor proposes to provide Capital One with adequate protection in the form of a replacement lien. As additional adequate protection, the Debtor will grant Capital One a second lien on the real property owned by CRL Properties, LLC, an entity owned by Zeiger and his wife, located at 74 Sand Park Road, Cedar Grove, New Jersey (the location where the Debtor operates) (the "CRL Property"),[3] solely to the extent of any diminution in value of the prepetition assets subject to the security interests and liens of Capital One as of the Petition Date.

31. Furthermore, the preservation of the Debtor's operations on a going-concern basis will maintain the value of Capital One's collateral. This will also avoid any abrupt discontinuation of the Debtor's operations. *See Aqua Assocs.*, 123 B.R. at 196 ("The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized."). The Debtor respectfully submits that the protections proposed herein to Capital One are appropriate to adequately protect Capital One's security interests. Accordingly, the Court should authorize the Debtor use the cash collateral in accordance with the terms of the Budget, subject to a variance of ten percent (10%) of the "net cash flow" line amounts set forth in the Cash Collateral Budget.

32. For the foregoing reasons, the Debtor respectfully submits that cause has been shown for the entry of the proposed interim order and that the Court should grant the Motion, on an interim basis, and authorize the Debtor to use Capital One's cash collateral in accordance with the Budget.

---

[3] Capital One has a first lien on the CRL Property.

### C. Request For Interim Relief

33. Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the fourteen day period following the filing of a motion for authority to use cash collateral "as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2). Similarly, Bankruptcy Rule 4001(c) permits a court to approve a debtor's request for authority to obtain financing during the same period "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(c)(2). In examining such requests under Bankruptcy Rule 4001, courts apply the same business judgment standard as is applicable to other business decisions. *See, e.g.*, *Ames*, 115 B.R. at 38. The Debtor requires the ability to obtain immediate credit to maintain its business operations. Such credit is needed to pay its expenses and to satisfy other essential working capital and operating needs. The immediate and irreparable harm that could result in the absence of approval of interim financing is detrimental to the interests of the Debtor, its creditors and all parties in interest. The Debtor submits that, for the reasons set forth herein, authority to use obtain post-petition financing and use of cash collateral on an interim basis as requested in this Motion is necessary to avert immediate and irreparable harm to the Debtor's business.

34. To the extent Bankruptcy Rule 6004(h) is applicable to this Motion, the Debtor also seeks a waiver of the fourteen day stay under Bankruptcy Rule 6004(h).

### D. Request For Final Hearing

35. Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2), the Debtor respectfully requests that the Court set a date for the Final Hearing that is no later than fourteen (14) days following the filing of this Motion.

### NOTICE, PRIOR REQUEST AND WAIVER OF BRIEF

36. No trustee, examiner or, creditors' committee has been appointed in this case. Notice of this Motion has been given to (i) the United States Trustee for the District of New

Jersey, (ii) counsel for Capital One, and (iii) the Debtor's twenty largest unsecured creditors. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

37. No prior request for the relief sought herein has been made to this or to any other court.

38. As no novel issue of law is raised and the relevant authorities relied upon by the Debtor are set forth herein, the Debtor respectfully requests that the requirement under D.N.J. LBR 9013-2 of filing a brief be waived.

**WHEREFORE**, the Debtor respectfully requests that this Court (i) enter the Interim Order, substantially in the form submitted herewith, authorizing the Debtor to borrow from Zeiger $200,000 on an interim basis and $500,000 on a final basis, and the use of Capital One's cash collateral; (ii) schedule the Final Hearing; and (iii) grant the Debtor such other and further relief as this Court deems just and proper.

Dated: November 12, 2010                    **LOWENSTEIN SANDLER PC**

                                By:     /s/Bruce Buechler
                                        Kenneth A. Rosen, Esq. (KR 4963)
                                        Bruce Buechler, Esq. (BB 0324)
                                        Thomas A. Pitta, Esq. (TP 3018)
                                        Nicole Stefanelli, Esq. (NS 4100)
                                        65 Livingston Avenue
                                        Roseland, New Jersey 07068
                                        Tel: (973) 597-2500
                                        Fax: (973) 597-2400

                                        *Proposed Counsel to the Debtor and*
                                        *Debtor in Possession*

## VERIFICATION

I, Michael Zeiger, pursuant to 28 U.S.C. §1746, verify under penalty of perjury that I am the President and Secretary of Admiral Wine and Liquor Co. and that the factual statements contained in the foregoing Motion and Exhibits attached hereto are true and correct to the best of my knowledge, information and belief.

_____
Michael Zeiger

Dated: November 12, 2010